IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

UNITED STATES OF AMERICA,

        Plaintiff,

v.                                  Case No. 6:16-cr-10051-JTM

JUAN M. RAMIREZ, JR.,

        Defendant.

**MEMORANDUM AND ORDER**

This matter came before the court on August 1, 2016, for an evidentiary hearing on defendant Juan M. Ramirez., Jr.'s Motion to Suppress Evidence (Dkt. 14).  The court took the matter under advisement at the conclusion of the hearing. For the reasons set forth herein, the court finds that the motion should be denied.

_**Facts**_. Based on the evidence presented at the hearing, the court finds the following facts. On the evening of March 27, 2015, Kansas Highway Patrol Master Trooper Cody Parr was working near Liberal in Seward County, Kansas. Parr was assigned to work with Drug Enforcement Administration (DEA) agents on a drug investigation. DEA agents had a nearby house under surveillance where they suspected drugs were being distributed. DEA agents notified Parr when vehicles visited and left the suspect house, with the expectation that Parr could, if possible, stop the vehicles for traffic violations.

Around 10:15 p.m., DEA agents gave Parr a description of a particular pickup truck that left the suspect house.   Parr drove to Seward County Road 3, where he anticipated the pickup would pass. Moments after he reached that road, he saw the lights of two vehicles coming toward him. Parr turned on his radar and clocked the first vehicle at 31 miles per hour. His radar showed the second vehicle was going 37 miles per hour. The speed limit on this portion of road was 30 miles per hour. Both vehicles were pickup trucks.

As it passed him, Parr recognized the second pickup as the one described by the DEA agents. Parr turned around and followed the trucks. The second pickup pulled up closely behind the first truck. Parr intended to stop the second truck for speeding and for following too closely as soon as the truck reached an area with roadside shoulders where he could safely make a stop. This section of the road was narrow with no shoulders. Before he could do so, however, the second pickup signaled a left turn at the next street. Parr knew the neighborhood into which the truck was turning was a high-crime area with significant gang activity.

Parr turned on his emergency lights to stop the truck, and the truck came to a stop after completing the left turn. Parr radioed in the license plate and approached the driver, defendant Juan Ramirez, Jr., who produced proof of insurance but was unable to produce a driver's license. Before Parr could tell him the reason for the stop, Ramirez indicated that he remembered Parr from a traffic stop a month or two earlier. While standing at the open window of the truck, Parr could smell a significant odor of both raw and burnt marijuana. He could also see that Ramirez's eyes were bloodshot.

Because Ramirez could not produce a license, Parr asked him to come back to the patrol car, where Parr could run a computer check. Parr patted down Ramirez's pockets to make sure he was not carrying a weapon. Ramirez sat in the front passenger seat while Parr got in the driver's seat and ran a computer check.

Parr subsequently confirmed that Ramirez had a valid driver's license. Parr told Ramirez that he stopped him for following too closely. He then told him that, based upon the smell of marijuana in the truck, he was going to search it. Ramirez protested that he hadn't done anything. Parr handcuffed Ramirez, informing him that he was being detained but was not under arrest.

Shortly after handcuffing Ramirez, a City of Liberal Police Officer arrived on the scene. Parr spoke to him and began to search the pickup. Parr soon found a "blunt" (marijuana cigar) in the cab. He also discovered what appeared to be (and was later confirmed to be) crystal methamphetamine, hidden within a plastic water bottle. Parr placed Ramirez under arrest and transported him to the Seward County Jail.  Ramirez's pickup truck was impounded.[1]

In a processing room at the jail, Parr obtained biographical information from Ramirez before informing him of his *Miranda* rights. Parr read the rights off of a card, and informed Ramirez of his right to remain silent, that anything he said could be used against him in court, that he had the right to talk to a lawyer and have him present during questioning, that a lawyer could be appointed if he could not afford one, and

---

[1] Defendant does not specifically challenge the seizure of his vehicle. The video recording of the traffic stop supports a finding that Ramirez's truck posed a potential safety hazard or impediment to traffic and was thus reasonably impounded. *See United States v. Sanders*, 796 F.3d 1241, 1249 (10th Cir. 2015) (vehicle obstructing or impeding traffic on public property may be impounded).

that he could decide at any time to exercise his rights and not answer any questions. Ramirez said that he understood his rights. Parr testified that although Ramirez showed some minor signs of impairment, he appeared to understand everything that was said to him and he had no trouble understanding or communicating with Parr. Parr asked Ramirez if he wanted to answer questions. Ramirez said that he would. Parr asked where Ramirez purchased the drugs. Ramirez responded, "They're mine. I'm guilty." He gave the same response a second time when Parr asked where he got the drugs. Ramirez then declined to answer any further questions.

Parr was notified the next day (March 28, 2015) that Ramirez's pickup truck was designated for forfeiture as a result of the incident. Parr took an inventory of the truck's contents shortly before those items were turned over to one of Ramirez's relatives. Among other items, a .45 Colt pistol with a loaded magazine was found in the truck's tool box.

***Discussion***.  Defendant contends the initial stop of his vehicle was unreasonable under the Fourth Amendment. He further contends the officer acted unreasonably by ordering him out of the truck, by handcuffing him, and by searching the truck without his consent. Dkt. 15.

The court finds that the initial stop of the truck was reasonable. A traffic stop is reasonable under the Fourth Amendment if the stop is based on an observed traffic violation or if the officer has a reasonable articulable suspicion that a traffic violation has occurred. *United States v. DeGasso*, 369 F.3d 1139, 1143 (10th Cir. 2004).  The Government presented essentially unchallenged testimony that Parr clocked the

defendant's truck on radar going 37 miles per hour in a 30 mile per hour zone, that Parr was trained and certified in operation of the Stalker radar unit, that the radar unit was working properly, and that its certification was current. Under the circumstances, Parr had reasonable suspicion of a speeding violation that was sufficient to justify the stop. In view of this fact, the court need not address whether there was also reasonable suspicion to believe the defendant violated K.S.A. § 8-1523(a) by following another vehicle too closely.

The court further finds that the Trooper's detention of defendant and his search of the vehicle were reasonable. When Parr conversed with defendant at the window of the pickup truck, he detected a strong odor of both raw and burnt marijuana. That fact was sufficient to justify an investigatory detention of the defendant and to render reasonable the officer's subsequent search of the pickup. When an officer has probable cause to believe a vehicle contains contraband, no warrant or consent is required prior to searching the vehicle. *Florida v. White*, 526 U.S. 559, 563-64 (1999). The smell of burnt marijuana alone provides probable cause to search the cabin of a vehicle. *United States v. Snyder*, 793 F.3d 1241, 1244 (10th Cir. 2015). Moreover, it provided a reasonable suspicion of criminal activity sufficient to justify a brief detention of Ramirez while the officer investigated. *See e.g., United States v. Barry*, 394 F.3d 1070, 1078 (8th Cir. 2005) (smell of marijuana in vehicle provided reasonable suspicion for detention). Finally, handcuffing the defendant while Parr searched the pickup truck was a reasonable safety measure because the stop was made in a dark area at night, it was in a high-crime neighborhood, the officer had probable cause to believe the truck contained illegal

5

drugs, and Parr was by himself when he made the decision to handcuff Ramirez. *See United States v. Shareef*, 100 F.3d 1491, 1502 (10th Cir. 1996) (the use of forceful measures such as handcuffs does not necessarily transform a *Terry* stop into an arrest when the circumstances reasonably warrant such measures). The subsequent discovery of drugs in the pickup provided probable cause to arrest the defendant – the sole occupant of the vehicle – for unlawful possession of a controlled substance.

The court also rejects defendant's challenge to the voluntariness of his statements at the jail after defendant received *Miranda* warnings. A *Miranda* waiver must be "'voluntary in the sense that it was the product of a free and deliberate choice rather than intimidation, coercion, or deception.'" *Smith v. Mullin*, 379 F.3d 919, 932 (10th Cir.2004) (quoting *Moran v. Burbine*, 475 U.S. 412, 421 (1986)). The court makes the determination from the totality of the circumstances, including: the personal characteristics of the accused and the details of the interrogation; the suspect's age, intelligence, and education; whether the suspect was informed of his or her rights; the length and nature of the suspect's detention and interrogation; and the use or threat of physical force against the suspect. *Id*. The evidence here shows that Ramirez understood the *Miranda* warnings and he voluntarily gave up those rights to make a statement. Defendant's age, maturity, and intelligence show that he understood what he was doing and that he acted of his own free will. There was evidence that he was mildly impaired at the time he made a statement, but not to such a degree that it rendered his actions involuntary.  "The mere fact of drug or alcohol use will not suffice to overcome evidence showing that the defendant was sufficiently in touch with reality so that he

knew his rights and the consequences of abandoning them." *United States v. Augustine*, 742 F.3d 1258, 1265 (10th Cir.), *cert. denied,* 134 S. Ct. 2155 (2014) (citation and quotation marks omitted). "[A] defendant must be impaired to a substantial degree to overcome his ability to knowingly and intelligently waive his privilege against self-incrimination." *Id.; see also United States v. Curtis,* 344 F.3d 1057, 1065–67 (10th Cir.2003) (finding a valid waiver where the defendant was allegedly under the influence of marijuana, crack cocaine, and alcohol). Parr's testimony indicated that defendant was not impaired to a substantial degree at the time he waived his rights. That testimony was credible. Moreover, it was supported by video evidence from the stop, which shows that the defendant intelligently conversed with Parr during the stop.

Defendant also seeks to suppress evidence of the firearm found during a search of the truck at the impound lot on March 28, 2015. He argues there were no exigent circumstances for this second search and that the officer had time to obtain a warrant before searching. Dkt. 15 at 6. The second search, however, was likewise supported by probable cause. The fact that drugs had been located during a roadside search of the pickup the night before did not extinguish probable cause for a search at the station under more controlled conditions the following day. *See United States v. Gastiaburo*, 16 F.3d 582, 586 (4th Cir. 1994) ("[T]he justification to conduct a warrantless search under the automobile exception does not disappear merely because the car has been immobilized and impounded."). And the presence of probable cause means the officer was under no obligation to obtain a warrant before searching the truck. *See United States v. Anderson,* 114 F.3d 1059, 1066 (10th Cir. 1997) ("[I]f police have probable cause

to search a car, they need not get a search warrant first even if they have time and opportunity."). Even if this were not the case, the evidence supports a finding that the search was reasonable because it was made in good faith pursuant to a policy of searching impounded cars to avoid liability for lost property. *See United States v.* Taylor, 592 F.3d 1104, 1108 (10th Cir. 2010) (reasonable police inventory procedures administered in good faith satisfy the Fourth Amendment). The court thus finds the second search of the pickup truck was reasonable as well.

**IT IS THEREFORE ORDERED** this 2nd day of August, 2016, that defendant's Motion to Suppress Evidence (Dkt. 14) is DENIED.

___s/ J. Thomas Marten_____
J. THOMAS MARTEN, JUDGE
